## Melvin v. Doe

C.P. of Allegheny County, no. GD99-10264.

*John R. Orie Jr.* and *Robert O. Lampl,* for plaintiff.
*Susan A. Yohe* and *Witold J. Walczak,* for defendants.
*Ann Beeson* and *Christopher A. Hansen,* of counsel to defendants.
*Ira Weiss,* for Senator Bodack.

WETTICK JR., *J.,* May 23, 2000—The subject of this opinion and order of court is a motion filed on behalf of Pennsylvania State Senator Leonard J. Bodack to quash a subpoena to attend a deposition.

This is a defamation action instituted against an unknown person or persons who published the following statement on a website:

"Despite being prohibited from engaging in political activity, a couple of judges have been keeping themselves pretty busy recently with politics. Judge Joan Orie Melvin has been lobbying the Ridge administration on behalf of a local attorney seeking the appointment by Governor Ridge to fill the vacancy on the Allegheny County Court of Common Pleas created by the mandatory retirement earlier this month of Judge Robert Dauer, now a senior judge. Dauer has also been actively pushing for this attorney's appointment. The last GS99 heard, this attorney is on the governor's short-list of candidates. Let's hope that the governor does the right thing and appoints somebody better qualified. Shame on Orie Melvin and Dauer—this is exactly the kind of misconduct by our elected officials that the residents of Allegheny County will not stand for anymore . . . and a good reason why judges should be held accountable for their actions and remembered at the polls at retention time."

In response to plaintiff's discovery requests designed to obtain the identity of the person or persons who published the statement, the Doe defendant(s) retained counsel to provide a defense to plaintiff's complaint. Counsel for the Doe defendants has challenged any discovery that would identify the person or persons who published the statement (at least at this stage of the proceedings) on the ground that the First Amendment permits anonymous political speech.

I agreed with defendants that plaintiff should not be permitted to engage in discovery designed to obtain the identity of the Doe defendants until the Doe defendants

have an opportunity to establish that plaintiff cannot prevail in this lawsuit. Consequently, I have stayed the discovery which plaintiff seeks until defendants have the opportunity to establish through summary judgment proceedings that plaintiff, in fact, engaged in the conduct described in the publication.

Defendants have scheduled the deposition of Senator Bodack for the purpose of asking Senator Bodack whether anyone contacted him during the relevant period to request that he encourage the governor's office to appoint Mr. Kevin Sasinoski or any other local attorney to fill a vacancy on the Common Pleas Court of Allegheny County. In their memorandum in opposition to motion to quash subpoena (Sen. Leonard Bodack) at 3, defendants state that they "understand and believe that the lobbying which took place went through the person of State Senator Leonard Bodack, a key member of the legislative delegation from Allegheny County and a member of the Senate Rules and Executive Nominations Committee." However, defendants have not described any evidence that would support this statement.

The Pennsylvania State Senate plays an important role in filling judicial vacancies. While only the governor may nominate a person to fill a vacancy, any nomination must be confirmed by a two-thirds vote of the Pennsylvania State Senate.[1] Consequently, the process for filling judi-

---

1. Vacancies in the office of judge are governed by Article 5, Section 13 of the Pennsylvania Constitution and 42 Pa.C.S. §3132 which provide that a judicial vacancy shall be filled by appointment by the

cial vacancies involves back-and-forth lobbying between individual state senators and the governor's office.

Senator Bodack contends that the subpoena must be quashed because any information he obtains concerning appointments by the governor to fill vacancies on common pleas courts is obtained in his capacity as a legislator in the performance of legitimate legislative activity. Consequently, this information is privileged under the speech and debate clause of the Pennsylvania Constitution which reads as follows:

*"Section 15. Privileges of members*

"The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place." Pennsylvania Constitution Article 2, Section 15.

It is the position of Senator Bodack that the speech and debate clause covers any communications that Senator Bodack has with anyone in the nature of lobbying and advocacy activities involving a potential candidate for a judicial appointment. Defendants, on the other hand, seek to distinguish between activities that are "political" and activities that are "legislative." They contend that the speech and debate clause prohibits inquiry only as to the performance of purely legislative activities,

---

governor and that the appointment shall be with the advice and consent of two-thirds of the members elected to the senate.

which, according to defendants, do not involve any activities other than mandated legislative duties.

Defendants do not cite any Pennsylvania appellate court case law that supports their position. Instead, they refer to the following discussion of the federal speech and debate clause in *Romero-Barcelo v. Hernandez-Agosto,* 75 F.3d 23, 29 (1st Cir. 1996) (citations omitted): Article 1, Section 6 of the United States Constitution "covers 'a committee hearing or report designed to inform the [legislative] membership,' but not an individual 'senator's publication of press releases or newsletters,' nor individual 'political' activities, such as are involved in 'legitimate "errands" performed for constituents, the making of appointments with government agencies, [and] assistance in securing government contracts.' " Defendants also cite the following language from an opinion of the United States Supreme Court in *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 2537 (1972):

"In sum, the speech or debate clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts. It is well known, of course, that members of the Congress engage in many activities other than the purely legislative activities protected by the speech or debate clause. These include a wide range of legitimate 'errands' performed for constituents, the making of appointments with government agencies, assistance in securing government contracts, preparing so-called 'newsletters' to constituents, news

releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the speech or debate clause."

This language upon which defendants rely does not refer to the present situation where a legislator was allegedly asked to take a position with regard to a matter that comes within the performance of the legislator's official responsibilities.

In determining whether an activity comes within the scope of Article 2, Section 15, the Pennsylvania courts apply the standard that the speech and debate clause must be interpreted broadly to protect legislators from judicial interference with their legitimate legislative activity. Even when the activity questioned is not literally speech or debate, a court must determine if it falls within the legitimate legislative sphere. *Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 383, 368 A.2d 675, 680-81 (1997). "Accordingly, the members, and their staff, of the General Assembly are protected from inquiries into those activities generally said or done in the performance of their official duties." *Lincoln Party v. General Assembly,* 682 A.2d 1326, 1333 (Pa. Commw. 1996).

*Harrison Development Corporation v. Common-wealth, Department of General Services,* 135 Pa. Commw. 177, 580 A.2d 1174 (1990), *reversed on other grounds,* 532 Pa. 45, 614 A.2d 1128 (1992), involved a fact situation that is closest to the fact situation in the present case. In that case, legislation sponsored by State Senator Tilghman, the majority chair of the Senate Appropriations Committee, allegedly singled out Harrison Development for disparate treatment. Under this legislation, Harrison Development was subject to the provisions of the Sunshine Act and the Right to Know Law. Harrison Development brought a lawsuit, naming Senator Tilghman as a defendant, which challenged the constitutionality of the legislation and sought injunctive relief barring the senator and others from making demands on Harrison Development for financial and other information in compliance with the new legislation. Senator Tilghman contended that the claims against him were barred by the speech and debate clause because, in his capacity as the majority chair of the Senate Appropriations Committee, he made requests for information in order to fulfill his responsibility to review and investigate the expenditure of Commonwealth funds. Harrison Development, on the other hand, contended that the requests did not fall within a legitimate legislative sphere. The court, applying the standard enunciated in *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 322 (1986), granted Senator Tilghman's motion for summary judgment on the basis of legislative immunity. It stated that:

"To permit a cause of action against respondent Tilghman for every instance for which he requested information concerning Commonwealth expenditures would go against the holding in *Consumer Party* that broad interpretation should be given to the speech and debate clause to protect the legislature from judicial interference with their legitimate legislative activities." *Harrison Development,* 135 Pa. Commw. at 184, 580 A.2d at 1177.

On the basis of the Pennsylvania appellate courts' broad construction of the speech and debate clause, in all likelihood, defendants' general inquiry seeking information about any requests made to Senator Bodack concerning the filling of a judicial vacancy involves information protected by the speech and debate clause. However, even assuming that the speech and debate clause does not extend to requests to a state senator regarding the filling of judicial vacancies, defendants' discovery requests are barred by the provisions of Pa.R.C.P. 4011(b) which prohibit any discovery which would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party.

State senators are required to participate in the process under which vacancies in the courts are filled. The process includes talking with persons who are proposing that various candidates either be appointed or not be appointed.

Under our system of government, the executive, judicial, and legislative branches of government are separate, equal, and independent branches of government.

See *Pennsylvania State Association of County Commissioners v. Commonwealth,* 545 Pa. 324, 681 A.2d 699, 702 (1996), quoting *Beckert v. Warren,* 497 Pa. 137, 144, 439 A.2d 638, 642-43 (1981) ("A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, coequal branches of government.").

The Pennsylvania Supreme Court has consistently recognized that under a tripartite system of government, each branch of government must refrain from questioning or otherwise interfering with the process through which the other branches of government carry out their responsibilities. Thus, the Pennsylvania Supreme Court does not become involved in the legislative process, including the manner in which individual legislators conduct themselves in any manner in which they appear to be functioning as legislators rather than as private citizens, unless the Pennsylvania Constitution mandates judicial involvement. See *Consumer Party of Pennsylvania v. Commonwealth, supra* at 171-74, 507 A.2d at 329-31. Therefore, the Pennsylvania Supreme Court does not intend for any of its rules of discovery to be construed to authorize discovery that would require individual legislators to describe the manner in which they are performing their legislative tasks. For this reason, the discovery rules shall not be construed to permit litigants in a private civil action (at least without a showing of extraordinary circumstances) to distract and hinder legislators in their performance of their legislative tasks by requiring their appearances at depositions for the pur-

pose of describing their involvement in the process through which judicial vacancies are filled.

In addition, in this case, defendants are seeking communications regarding the filling of judicial vacancies between Senator Bodack and any other persons. Defendants' inquiry is not limited to plaintiff or persons identifying themselves as acting on plaintiff's behalf because of the possibility that persons were acting on plaintiff's behalf without so stating. Consequently, the discovery which defendants seek would include communications from third persons regarding Mr. Sasinoski that have nothing to do with plaintiff. The right to petition one's government ordinarily includes the right to make communications in confidence where both the maker of the communication and the elected official wish to maintain confidentiality.[2]

For these reasons, I enter the following order of court:

## ORDER

On May 23, 2000, it is hereby ordered that the motion of Senator Leonard J. Bodack to quash subpoena is granted and all parties are barred from scheduling his deposition in the absence of a court order to the contrary.

---

2. See *Miller v. Transamerican Press Inc.*, 709 F.2d 524, 530-31 (9th Cir. 1983), where the court—using the example of informants giving information useful in exposing corruption in government or elsewhere—found that the possibility of public exposure of a source's identity can deter constituents from candid communications with their legislators.